IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| **RAQUEL CARMON**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 19SL-CC02264 |
| v. | ) | |
| | ) | |
| **SAKS FIFTH AVENUE LLC**, | ) | Division No. 10 |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S FIRST AMENDED PETITION

**COMES NOW** Plaintiff, Raquel Carmon ("Plaintiff"), by and through undersigned counsel, and for her First Amended Petition against Defendant Saks Fifth Avenue LLC ("Defendant"), states to this Honorable Court as follows:

### PARTIES

1. Plaintiff is a former employee of Defendant, which operates a department store in in Saint Louis County, Missouri.

2. Plaintiff was subjected to severe and pervasive race discrimination, retaliation, and a hostile work-environment, all in violation of the Missouri Human Rights Act (the "MHRA"), as discussed in more detail below.

3. Plaintiff is a current resident and citizen of the State of Missouri and, was at all times relevant herein, a resident and citizen of the State of Missouri who worked in Saint Louis County, Missouri.

4. At all times relevant herein, Plaintiff was an "employee" of Defendant as defined by the MHRA.

1

5. During the time of the discrimination and retaliation described herein, Defendant was a Massachusetts limited liability company with its principle place of business in New York, New York.

6. Defendant's sole member is Saks & Company LLC, a Delaware limited liability company with its principle place of business in New York, New York.

7. The sole member of Saks & Company LLC is Saks Incorporated, a Tennessee corporation with its principle place of business in New York, New York.

8. The sole shareholder of Saks Incorporated is Lord and Taylor Acquisition Inc., a Delaware corporation in its principle place of business in New York, New York.

9. The sole shareholder of Lord and Taylor Acquisition Inc. is the ultimate parent company, Hudson's Bay Company (also known as "HBC"), a Canadian corporation with its principle place of business in New York, New York.

10. Defendant conducts continuous and systematic business in the State of Missouri from its location at 1 Plaza Frontenac, St. Louis, Missouri 63141.

11. Defendant is an "employer" within the meaning of the MHRA.

**JURISDICTION AND VENUE**

12. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

13. Jurisdiction and venue are proper in Saint Louis County, Missouri, pursuant to RSMo. §§ 213.111.1, 287.780, and 508.010.

14. Plaintiff received one Notice of Right to Sue letter from the Missouri Commission on Human Rights (the "MCHR") on or about March 11, 2019. A copy of Plaintiff's Notice of

Right to Sue from the MCHR is attached hereto, marked as "Plaintiff's Exhibit 1," and is hereby incorporated as if fully set forth herein.

15. Plaintiff's cause of action arises out of conduct that took place in Saint Louis County, State of Missouri.

## ADMINISTRATIVE PROCEDURES

16. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

17. On or about August 2, 2018, Plaintiff timely filed with the MCHR and the Equal Employment Opportunity Commission (the "EEOC") a Charge of Discrimination (Plaintiff's "Original Charge") against Defendant on the basis of race discrimination and retaliation in violation of the MHRA and corresponding, federal anti-discrimination laws. A copy of Plaintiff's Original Charge is attached hereto, marked as "Plaintiff's Exhibit 2," and is hereby incorporated as if fully set forth herein.

18. On or about March 11, 2019, the MCHR issued Plaintiff her Notice of Right to Sue (*see* Plaintiff's Exhibit 1) related to Plaintiff's aforementioned charge of discrimination, and Plaintiff's original lawsuit in the above-captioned matter was filed within 90 days of the MCHR's issuance of said Notice on June 7, 2019.

19. Plaintiff's Original Charge provided the MCHR and the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be, and is, as broad as the scope of an MCHR or EEOC investigation that could reasonably be expected to have grown out of Plaintiff's Original Charge.

20. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action, and Plaintiff's Petition was filed within all applicable statutes of limitations.

## GENERAL FACTUAL ALLEGATIONS

21. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

22. Plaintiff was employed by Defendant in asset protection from November 2015 until she was terminated on July 19, 2018.

23. The store Plaintiff worked at for Defendant was located in Frontenac, Missouri, an affluent suburb of St. Louis (hereinafter referred to as the "Frontenac store").

### Factual Allegations Related to Plaintiff's Race Discrimination Claims

24. Plaintiff is an African American woman.

25. Plaintiff's direct supervisor was Nathan Dickey, District Asset Protection Manager (hereinafter referred to as "Dickey").

26. Starting in 2016 and until her termination, Plaintiff inquired to her boss, Dickey, about opportunities for promotions.

27. Starting in 2016 and prior to her complaint of racial discrimination in April 2018, Plaintiff was told by Dickey that because she was an African American, she would likely not get a promotion in the Frontenac store.

28. Plaintiff was told by Dickey to "not hold her breath" with regards to obtaining a promotion.

29. Plaintiff was also told by Dickey that she would need to move to a more "diverse" location than the Frontenac store if she wanted a promotion.

30. By further way of example, Dickey stated the following to Plaintiff:

   a. April 7, 2017, Dickey stated that there is real racism at the Frontenac store.

   b. On May 1, 2017, Dickey stated that Plaintiff's performance review score was above target and that there is an old-school mentality of Defendant's leadership team in St. Louis, Missouri. As a result, Dickey informed Plaintiff, Plaintiff would never get promoted by Defendant in St. Louis, Missouri. He noted that Plaintiff had been reaching out for a mentor for over a year, and Defendant denied that request. Indeed, that same day, Dickey informed Plaintiff that he doubted anything would change if Defendant were sued for discrimination.

   c. On May 3, 2017, Dickey told Plaintiff not to get her hopes up about being promoted. Dickey informed Plaintiff that he had a conversation with an employee of Defendant, John Evans, who was Dickey's direct supervisor. Dickey told Plaintiff that he had informed Mr. Evans that Plaintiff kept getting the run around and was shut down from promotion opportunities.

   d. On May 24, 2017, Dickey complained about ethical problems in the building and stated that employees needed to make all decisions without coming to him.

   e. On July 15, 2017, Dickey discussed how African Americans are labeled at the store and was sure that racial slurs were used by Defendant's employees.

   f. On July 17, 2017, Dickey stated that he has seen racial discrimination against African Americans, Asians and Jews in the Frontenac store.

5

g.  On July 22, 2017, one of Defendant's employees talked about how he's heard Defendant's management team make jokes about Jewish people and call Asian people "orientals".

h.  On July 22, 2017, when a letter came out to employees at the Frontenac store describing racism, employees expressed that they did not feel comfortable sharing their experiences with Derrick Wells in human resources.

i.  On July 26, 2017, Dickey stated that a black janitor at the Frontenac store could be selling drugs instead of taking the bus to the Frontenac store, suggesting that it would have been easier for a black person in a "shitty area" to sell drugs instead of work at the Frontenac store.

j.  On July 29, 2017, Dickey encouraged Plaintiff to ask John Evans for an interview because Plaintiff had reduced asset loss to a third of what it had been at the Frontenac store. However, Dickey warned Plaintiff, Defendant would be hot and cold about promoting Plaintiff.

k.  On August 4, 2017, Dickey told Plaintiff that Division Vice President of Human Resources Derrick Wells told Dickey that Defendant had handled Plaintiff's request to be promoted incorrectly.

l.  On August 5, 2017, Dickey stated that Plaintiff was instrumental in the success of the Frontenac store, and that he would tell Defendant that some employee's opinions of Plaintiff cannot be trusted.

m.  On August 8, 2017, Dickey told Plaintiff that African Americans who come into the Frontenac store usually have a clean presentation to compensate for the unclean presentation of other African Americans.

6

n. August 8, 2017 Nate talks about African Americans who come in the store usually have a clean presentation.

o. On or around September 7, 2017, Dickey informed Plaintiff that the old-school mentality at Defendant still existed but that he believed it would go away as older employees at Defendant retired.

p. Plaintiff continued to not be promoted within Defendant because she was perceived as African American by Defendant and was working at the Frontenac store.

q. On April 13, 2018, Dickey discussed how Dickey told John Evans that Dickey would sue Defendant for his own employment issues with Defendant. Furthermore, Dickey discussed how what he characterized as a racist event would be held at the Frontenac store.

r. On April 17, 2018, Dickey stated that he believed that Defendant was trying to fire him, and Dickey stated that John Evans told Dickey to fabricate reasons to fire Plaintiff.

**Factual Allegations Related to Defendant's Discriminatory and/or Retaliatory Conduct Towards Plaintiff**

31. In or about April 2018, Plaintiff wrote a formal complaint to Defendant's human resources department, complaining about the racist discrimination she was experiencing.

32. On May 4, 2018, the work file cabinet was locked in the office after the discrimination complaint was sent.

33. After her complaint, Dickey started retaliating against Plaintiff and treating her very poorly.

7

Electronically Filed - St Louis County - October 09, 2019 - 11:28 AM

34. Dickey accused Plaintiff of infractions for which other employees of Defendant would not be disciplined.

35. In or about May 2018, Plaintiff complained again to human resources about the retaliation she was experiencing from Dickey.

36. During Plaintiff's employment, Defendant had a policy of donating merchandise that was left behind by customers in the Frontenac store.

37. Customers would often buy merchandise and have the Frontenac store hold the items, and then those customers would often not return to pick up those items.

38. Items were donated after they were left behind by customers for 90 days or longer.

39. Plaintiff was told in 2016 by Dickey that she did not have to specifically ask each time she was going to donate items that were left behind for 90 days or longer, and that she could just take such merchandise to places to donate.

40. This continuous discrimination, harassment and retaliation continued into June 27, 2018, when Dickey, with Defendant's assistance, orchestrated the unlawful arrest of Plaintiff.

41. On or about June 27, 2018, Plaintiff took certain merchandise that was left in the Frontenac store longer than 90 days to her car to donate those items, as Dickey had previously told her she had the authority to do.

42. Thereafter, Plaintiff left for a previously scheduled vacation.

43. When Plaintiff returned to work in early July 2018, Dickey told her that she needed to return the aforementioned items.

44. Plaintiff still had the items in her car, so she brought them back inside the Frontenac store at Dickey's request.

45. Dickey called the police on Plaintiff and accused her of stealing the items, which totaled over $5,000.

46. Dickey knew that Plaintiff had not stolen any items.

47. Dickey knew he had given Plaintiff permission to donate the items.

48. Dickey intentionally relayed false information to the police in order to have Plaintiff arrested.

49. The police arrived at the Frontenac store and arrested Plaintiff.

50. Plaintiff was handcuffed and removed from the Frontenac store in front of her colleagues and taken to the police station.

51. Plaintiff was charged with felony stealing.

52. Defendant terminated Plaintiff from her employment on July 19, 2018.

53. Dickey was retaliating against Plaintiff for reporting Dickey's discriminatory and retaliatory conduct to human resources.

54. Defendant assisted this retaliation by supporting Dickey in his retaliatory actions.

55. This experience was extremely humiliating to Plaintiff.

56. Plaintiff's mug shot is online, and that mug shot is readily visible when her name is searched online.

57. Plaintiff had to hire a criminal defense lawyer and incurred legal fees as a result of the false charges against her.

58. The charges against Plaintiff were dismissed, as they were completely without merit and false.

59. Defendant knew that the charges against Plaintiff were completely without merit and were false and took no action to correct the false charges against Plaintiff.

## COUNT I: RACE DISCRIMINATION
*Violation of the MHRA*

60. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

61. Plaintiff considers herself, in part, to be a member of the African American race.

62. Additionally, due to Plaintiff's skin color and darker complexion, Plaintiff is under information and belief that all reasonable people consider her to be a member of the African American race.

63. Plaintiff, by virtue of her African American race, is a member of a class of persons protected by the MHRA.

64. Plaintiff suffered adverse employment action because of her race, including but not limited to failure to receive a promotion, harassing behavior at work, false arrest, and ultimately termination.

65. Plaintiff's race was a contributing and motivating factor in Defendant's conduct for the following reasons, including, but not limited to:

    a. Plaintiff was denied promotions and was expressly told it was because of her race;

    b. Plaintiff was disciplined for false and pretextual reasons, and for reasons non-African American persons were not disciplined for;

    c. Plaintiff was wrongfully accused of stealing; and

    d. Plaintiff was terminated for false and pretextual reasons, and for reasons for which other non-African American employees were not terminated.

66. As a direct and proximate result of the foregoing, Plaintiff suffered intentional discrimination – because of her race, in violation of the MHRA – at the hands of Defendant during the course of Plaintiff's employment.

67. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been, and continues to be, deprived of income, as well as other monetary and non-monetary benefits.

68. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered, and continues to suffer, garden-variety emotional distress and other related non-medical bill compensatory damages.

69. By failing to take prompt and effective remedial action – e.g., adhering to Plaintiff's requests for promotions; reprimanding Plaintiff's direct supervisor(s); terminating their employment; and/or notifying the police that Plaintiff had not actually stolen from Defendant – Defendant, in effect, condoned, ratified, and/or authorized the harassment, discrimination, and retaliation against Plaintiff.

70. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant and/or to deter it and others from like conduct in the future.

71. Plaintiff is entitled to recover reasonable attorneys' fees associated with the prosecution of the above-captioned cause of action against Defendant, as provided by the MHRA.

72. Plaintiff is entitled to recover costs associated with the prosecution of the above-captioned cause of action against Defendant, as provided by the MHRA.

Electronically Filed - St Louis County - October 09, 2019 - 11:28 AM

**WHEREFORE**, Plaintiff prays that this Honorable Court award Plaintiff damages – compensatory, nominal, and/or punitive – in such an amount in excess of $25,000.00 as is deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest, as allowed by law; and for such other and further relief deemed just and proper under the circumstances.

### COUNT II: RACE DISCRIMINATION – HOSTILE WORK ENVIRONMENT
*Violation of the MHRA*

73. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

74. Plaintiff considers herself, in part, to be a member of the African American race.

75. Additionally, due to Plaintiff's skin color and darker complexion, Plaintiff is under information and belief that all reasonable people consider her to be a member of the African American race.

76. Plaintiff, by virtue of her African American race, is a member of a class of persons protected by the MHRA.

77. During the course of the Plaintiff's employment with Defendant, Plaintiff was subjected to severe and unwelcome discrimination based on her race, including, but not limited to, that contained within this Petition.

78. The race-offensive, -harassing, and -discriminatory conduct was sufficiently severe and/or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile and/or abusive.

79. At the time the race-offensive, -harassing, and -discriminatory conduct occurred, and as a result of that conduct, Plaintiff believed her work environment to be hostile and/or abusive, and said conduct adversely affected the terms, conditions, and/or privileges of Plaintiff's employment with Defendant.

12

80. Defendant knew or should have known of the racial discrimination as Plaintiff had previously reported the racial discrimination to Dickey's superiors.

81. Defendant failed to exercise reasonable care to prevent and promptly correct the aforementioned race-offensive, -harassing, and -discriminatory conduct by Defendant, including, but not limited to, one or both of the following:

   a. Failing to make good-faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including racial discrimination; and/or

   b. Failing to properly train and/or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including the MHRA.

82. Plaintiff's race was, at the very least, a contributing and motivating factor in Defendant's disparate treatment of Plaintiff.

83. As a direct and proximate result of the foregoing, Plaintiff suffered intentional discrimination – because of her race, in violation of the MHRA – at the hands of Defendant during the course of Plaintiff's employment.

84. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been, and continues to be, deprived of income, as well as other monetary and non-monetary benefits.

85. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered, and continues to suffer, garden variety emotional distress and other related non-medical bill compensatory damages.

86. By failing to take prompt and effective remedial action – e.g., adhering to Plaintiff's requests for promotions; reprimanding Plaintiff's direct supervisor(s); terminating their employment; and/or notifying the police that Plaintiff had not actually stolen from Defendant – Defendant, in effect, condoned, ratified, and/or authorized the harassment, discrimination, and retaliation against Plaintiff.

87. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant and/or to deter them and others from like conduct in the future.

88. Plaintiff is entitled to recover reasonable attorneys' fees associated with the prosecution of the above-captioned cause of action against Defendant, as provided by the MHRA.

89. Plaintiff is entitled to recover costs associated with the prosecution of the above-captioned cause of action against Defendant, as provided by the MHRA.

**WHEREFORE**, Plaintiff prays that this Honorable Court award Plaintiff damages – compensatory, nominal, and/or punitive – in such an amount in excess of $25,000.00 as is deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest, as allowed by law; and for such other and further relief deemed just and proper under the circumstances.

### COUNT III: RACE DISCRIMINATION – RETALIATION
*Violation of the MHRA*

90. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

91. Plaintiff considers herself, in part, to be a member of the African American race.

Electronically Filed - St Louis County - October 09, 2019 - 11:28 AM

92. Additionally, due to Plaintiff's skin color and darker complexion, Plaintiff is under information and belief that all reasonable people consider her to be a member of the African American race.

93. Plaintiff, by virtue of her African American race, is a member of a class of persons protected by the MHRA.

94. As contained in this Petition, Plaintiff engaged in protected activities, including, but not limited to, reporting race discrimination against Plaintiff and other non-white people.

95. Plaintiff opposed racial discrimination and exercised her legal rights when she complained to human resources in April and May 2018.

96. Plaintiff's supervisor Dickey knew she had complained to human resources about him.

97. Plaintiff had a reasonable belief that she and other of Defendant's employees were being racially discriminated against by Defendant.

98. As a result of engaging in said protected activities, Plaintiff has suffered, and continues to suffer, adverse employment actions, as alleged in this Petition, including, but not limited to, being falsely reported to the police by Defendant and being terminated from her employment by Defendant.

99. Plaintiff's termination occurred after she opposed racial discrimination and harassment.

100. Defendants' reasons for Plaintiff's termination were false and pretextual.

101. Plaintiff was falsely accused of stealing and arrested because of Defendants' lies and wrongful conduct shortly after she opposed racial discrimination.

102. Other employees who did not oppose racial discrimination were not terminated or falsely arrested.

103. Plaintiff's race was, at the very least, a contributing and motivating factor in Defendant's disparate treatment of Plaintiff.

104. As a direct and proximate result of the foregoing, Plaintiff suffered intentional discrimination – because of her race, in violation of the MHRA – at the hands of Defendant during the course of Plaintiff's employment.

105. As a direct and proximate result of the actions and/or omissions of Defendant, Plaintiff has been, and continues to be, deprived of income, as well as other monetary and non-monetary benefits.

106. As a direct and proximate result of the actions and/or omissions of Defendant, Plaintiff has suffered, and continues to suffer, garden variety emotional distress and other related non-medical bill compensatory damages.

107. By failing to take prompt and effective remedial action – e.g., adhering to Plaintiff's requests for promotions; reprimanding Plaintiff's direct supervisor(s); terminating their employment; and/or notifying the police that Plaintiff had not actually stolen from Defendant – Defendant, in effect, condoned, ratified, and/or authorized the harassment, discrimination, and retaliation against Plaintiff.

108. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant and/or to deter it and others from like conduct in the future.

109. Plaintiff is entitled to recover reasonable attorneys' fees associated with the prosecution of the above-captioned cause of action against Defendant, as provided by the MHRA.

110. Plaintiff is entitled to recover costs associated with the prosecution of the above-captioned cause of action against Defendant, as provided by the MHRA.

**WHEREFORE**, Plaintiff prays this Honorable Court award Plaintiff damages – compensatory, nominal, and/or punitive – in such an amount in excess of $25,000.00 as is deemed fair and reasonable; for reasonable attorney's fees; for costs; for interest, as allowed by law; and for such other and further relief deemed just and proper under the circumstances.

Respectfully submitted,

**DONNER APPLEWHITE, ATTORNEYS AT LAW**

By: */s/ Thomas R. Applewhite*
Thomas R. Applewhite, #64437
Steven A. Donner, #63789
1108 Olive Street, Suite 200
St. Louis, Missouri 63101-1949
Phone: (314) 293-3526
Facsimile: (888) 785-4461
Email: tom.applewhite@da-lawfirm.com
steve.donner@da-lawfirm.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that a true and accurate copy of the foregoing was sent to all counsel of record via Missouri's Electronic Filing System on October 9, 2019. Furthermore, a copy was sent to Defendant's lawyer, Melody L. Rayl of Fisher & Phillips LLP, at mrayl@fisherphillips.com.

*/s/ Thomas R. Applewhite*

Electronically Filed - St Louis County - October 09, 2019 - 11:28 AM