UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RAQUEL CARMON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO.: 4:19-cv-02855-AGF ) |
| SAKS FIFTH AVENUE LLC, | ) ) |
| Defendant. | ) |

**DEFENDANT SAK'S FIFTH AVENUE LLC'S
MOTION TO COMPEL PLAINTIFF TO APPEAR IN PERSON FOR DEPOSITION
AND MEMORANDUM IN SUPPORT**

Pursuant to Rules 26, 30 and 37 of the Federal Rules of Civil Procedure and Local Rule 3.04 of this Court, Defendant Saks Fifth Avenue LLC ("Saks") moves for an Order compelling Plaintiff to appear in person for her deposition, which has been properly noticed to occur on October 6, 2020, pursuant to Federal Rule of Civil Procedure 30(b).[1] In support of this Motion, Saks states as follows:

**RELEVANT PROCEDURAL HISTORY AND BACKGROUND**

1. On June 7, 2019, Plaintiff filed her Petition for Damages in the Circuit Court of St. Louis County, Missouri, Case No. 19SL-CC02264, alleging a myriad of claims against several defendants arising from the termination of Plaintiff's employment with Saks. Plaintiff served Saks with the state court petition on September 26, 2019.

---

[1] Saks suggested to Plaintiff's counsel that the proper means to get this issue before the Court was for Plaintiff to file a motion for protective order. Plaintiff refused, stating that it was Saks' obligation "to seek the ability to depose her in person" and that Plaintiff did "not need to file a protective order to stop [Saks'] unauthorized discovery." Exhibit 3, Email exchange dated August 19-22. It is for that reason that Saks has filed this motion to seek an order from the Court in light of Plaintiff's clear communication that she will not appear for her deposition on October 6, 2020 as noticed.

2. On October 9, 2019, Plaintiff filed a motion to amend her petition, which was immediately granted as a matter of right under the Missouri Rules of Civil Procedure. Plaintiff's First Amended Petition dismissed most of the named defendants, leaving only Saks. The case was then timely removed to this court on grounds of diversity jurisdiction on October 21, 2019.

3. On December 18, 2019, Saks served initial written discovery on Plaintiff, as well as an open deposition notice seeking the videotaped deposition of Plaintiff to occur at the office of Plaintiff's counsel in St. Louis on a mutually agreed date. The parties then engaged in the exchange of written discovery responses and documents, which was still in progress when issues arose across the country and around the world in early 2020 related to COVID-19. Rather than proceed with depositions at that time, the parties agreed to mediate the case in an attempt to obtain a resolution. Mediation occurred on June 5, 2020 but was unsuccessful.

4. On August 3, 2020, Saks requested the availability of Plaintiff to appear for deposition later that month. The following day, counsel for Saks, Tom Applewhite, responded that the "Eastern District of Missouri isn't requiring in-person depositions, and we're not comfortable sitting in a room with someone who traveled across the state (no offense)." Mr. Applewhite stated he would obtain dates for a remote deposition over Zoom. **Exhibit 1**, August 3-4, 2020 Email.

5. What followed was a lengthy email exchange in which Saks repeatedly offered to take all manner of precautions and invited any additional suggestions from Mr. Applewhite that would facilitate an in-person deposition. In response, Mr. Applewhite adamantly insisted he and his client would only appear for a Zoom deposition, while providing no specific justification as to why he and/or Plaintiff might be at increased risk for COVID-19 or otherwise concerned. Instead, Mr. Applewhite pointed to paragraph 7 of the COVID-19 related Order issued by the Honorable Judge Rodney W. Sippel on May 29, 2020, which Mr. Applewhite contends prohibits in-person

depositions.  **Exhibit 2**, Order dated May 29, 2020.  Rather than continue the debate with Mr. Applewhite, Saks agreed to table the discussion to see if the situation would look different in a few weeks.  Exhibit 1, August 4, 2020 Email.

6. On the morning of Monday, August 17, 2020, Mr. Applewhite and the undersigned counsel for Saks participated in a 3-hour telephone conference to discuss a host of discovery disputes between the parties.  During that telephone conference, counsel for Saks again raised the issue of Plaintiff's deposition in an attempt to try and find a solution.  Again, Mr. Applewhite refused to agree to an in-person deposition of Plaintiff, citing only Judge Sippel's aforementioned Order as his reason for doing so.  This telephone conference satisfies the requirements of Rule 37(a)(1) and LR 3.04 that the parties have conferred in good faith in an effort to resolve the dispute.

7. Following the telephone conference, counsel for Saks followed up with an email to confirm Plaintiff's position regarding her refusal to appear for an in-person deposition.  Mr. Applewhite confirmed Plaintiff would not appear in person and informed Saks that it will require a court order for Plaintiff to appear, which must be sought by Saks.  **Exhibit 3**, August 19-22 Email.

8. On August 20, 2020, Saks served a Notice of Videotaped Deposition on Plaintiff, commanding her appearance for examination at the offices of Alaris Litigation in St. Louis on October 6, 2020.  The service communication made it clear the date was merely a placeholder as it was necessary to notice the deposition before seeking relief from the Court.  **Exhibit 4**, Notice of Deposition; Exhibit 3, August 19-22 Email.

9. On August 21 and 22, 2020, additional communication occurred between the parties, in which Plaintiff's counsel informed Saks that "there's a snowball's chance in hell I'd let my client appear in person while I appeared remotely."  Plaintiff's counsel went on to say Saks was free to file a motion to compel Plaintiff's in-person attendance, but stated he thinks Saks'

3

"chances of getting that approved are a similar snowball." Exhibit 3, August 19-22 Email. This motion followed.

## ANALYSIS AND AUTHORITY

### A. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 30(a)(1), a party is permitted to take the deposition of any person, including another party, without leave of court. A properly noticed deposition is to be conducted in person; however, "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4). A party may move for a protective order to seek relief from the court to protect the party from annoyance, embarrassment, oppression, or undue burden or expense, in which case the court may order the deposition not be had or that it be taken in a certain manner, including remotely. Fed. R. Civ. P. 26(c)(1). Absent the filing of a motion for a protective order, if a party fails to appear for that person's deposition after being served with proper notice, the court may order sanctions upon motion of the noticing party. Fed. R. Civ. P. 37(d)(1), (2). In short, it is the burden of the party from whom discovery is sought to establish to the court that good cause exists to prevent a properly noticed deposition of a party.

### B. THERE IS NO PROHIBITION ON IN-PERSON DEPOSITIONS

The only purported prohibition on the taking of in-person depositions Plaintiff has pointed to is paragraph 7 of Judge Sippel's May 29, 2020 Order, which Plaintiff contends expressly precludes the taking of any in-person depositions absent a court order for the foreseeable future. Exhibit 2, Order. However, it is clear the Order intends to apply to court proceedings rather than other litigation events such as client meetings and depositions. Indeed, Chief Magistrate Judge Nanette A. Baker of this District ordered an in-person deposition to take place just last week. *Howland v. Smith*, No. 2:18-CV-00018-NAB, 2020 WL 4890080 (E.D. Mo. Aug. 20, 2020)

4

(ordering in person deposition of defendant over COVID related objections of deponent).  **Exhibit 5**, unpublished case cited.  Although the circumstances presented there differ in some respects from the situation here, Judge Baker's opinion makes it clear that in-person depositions have not been prohibited by this District as Plaintiff contends, and that the mere presence of COVID-19 is insufficient, by itself, to justify a refusal to appear for an in-person deposition.

A review of the emergency orders currently in effect in St. Louis leads to the same conclusion as that in *Howland*.  There is absolutely no local restriction in place that would prohibit three individuals – and a court reporter – from gathering in a conference room for the purpose of taking a deposition provided social distancing and other guidelines can be observed.  **Exhibit 6**, St. Louis Health Commissioner's Orders 9, 11 and 13.  While one can always argue that the safest course would be for all of us to lock ourselves into our respective homes until any chance of being exposed to the COVID-19 virus has passed, that is simply not practical.  As a society, there is a need to balance the importance of moving forward and the interest of justice with any potential risk that may be present in a given situation.  There are reasonable measures that can be taken to sufficiently mitigate any risk.

      C.      **SAKS HAS OFFERED TO MAKE ACCOMMODATIONS**

As demonstrated in the email communication exchanged between counsel for the parties, Saks has offered to make any number of accommodations to facilitate the taking of an in-person deposition.  First, the deposition has been noticed to occur at the St. Louis offices of Alaris Court Reporting and Videography.  Alaris personnel have stated they can accommodate in-person depositions at their location so as to allow recommended social distancing and other disinfecting protocols – and have been doing so regularly.  In addition, Alaris requires temperature checks and completion of a questionnaire prior to entering their facility.  Saks has offered to take the following precautions in addition to those in place at the Alaris facility:

5

1. Everyone in attendance will wear a mask if desired, with the exception of the deponent who can wear a clear plastic face shield provided by Saks;

2. Saks will provide portable plexiglass stands that may be placed in front of all persons in the room if desired;

3. Electronic exhibits or an exhibit notebook can be used to reduce or eliminate the exchange of paper if desired; and

4. Saks' client representative will not attend the deposition in person to reduce the number of people present.

Counsel for Saks has invited Plaintiff's counsel to propose any other reasonable accommodations that could be made to facilitate an in-person deposition. Plaintiff has refused to do so, and instead has reiterated that Plaintiff will not appear for an in-person deposition absent a court order compelling her to do so.

### D. PLAINTIFF HAS NOT PROVIDED ANY JUSTIFICATION

It appears to be Plaintiff's counsel, rather than Plaintiff herself, who has some objection to appearing in person for the deposition. The only issue cited by Mr. Applewhite to date is that he has an infant daughter at home. Plaintiff's counsel has not stated he has any risk factors or underlying health conditions that would make his attendance particularly risky for him. Moreover, Plaintiff is currently represented by three attorneys from two separate law firms. Saks has stated it will be perfectly acceptable for any of the three to attend in person for the purpose of making objections or monitoring the proceedings while lead counsel in the case attends remotely. That suggestion has been rejected as well. Yet, there has been absolutely no justification provided to Saks as to why not one of the attorneys of record in the case would be unable to appear for an in-person deposition.

To the extent it is Plaintiff herself who is requesting that she not be required to attend an in-person deposition due to COVID-19 related health concerns, there is no support for such a position. Plaintiff's social media activity over the past few months demonstrates she has traveled

6

extensively throughout the country by air and has socialized with friends and family in various cities, including Miami Beach, Dallas and Las Vegas.  **Exhibit 7**, Excerpts from Plaintiff's Instragram account.  It would be completely disingenuous for Plaintiff to take the position that she can engage in such clearly risky behavior voluntarily, and at the same time refuse to appear in person for her deposition out of fear of exposure to COVID-19.

E.    SAKS WILL BE PREJUDICED

Mr. Applewhite contends that the deposition of Plaintiff "is equally effective over Zoom" as it would be in person.  Exhibit 1, August 4, 2020 Email.  As any seasoned litigator well knows, that is simply not true.  We are seeking the deposition of Plaintiff in an employment discrimination case, in which it is particularly important for the examining attorney to be able to observe Plaintiff in person to better evaluate her credibility, demeanor and effectiveness as a witness in advance of trial.  The entire case will hinge on Plaintiff's testimony and the ability of Saks' counsel to elicit candid and detailed testimony, while at the same time evaluating the credibility of Plaintiff's responses to further guide the examination.

Moreover, in this particular case Plaintiff covertly recorded literally hundreds of hours of workplace conversations for over a year prior to her termination.  Saks will need to make in depth inquiry about many of those recordings, which will be further complicated if the parties are appearing remotely.  "If [Plaintiff] has potentially important information, then it is reasonable for defense counsel to depose [her] in person."  *Hallmark Indus., Inc. v. Hallmark Licensing, LLC*, No. 4:18-CV-0236-DGK, 2019 WL 302514, at *4 (W.D. Mo. Jan. 23, 2019).

Even Plaintiff's counsel concedes that there is a dramatic difference between appearing remotely and being in the same room for a deposition.  In a final attempt to avoid the need to file this motion, Saks suggested that since it is Plaintiff's counsel who is reluctant to attend an in-person meeting, perhaps he could attend remotely while the deposition was conducted in person.

7

In response, Plaintiff's counsel, Jeremy Hollingshead, stated "there's a snowball's chance in hell I'd let my client appear in person while I appeared remotely." Exhibit 3, August 22, 2020 Email. While Saks does not dispute the sentiment, it does confirm that there is a distinct disadvantage in defending – or taking – a deposition if counsel is not present in the same room with the deponent.

Saks will be demonstrably prejudiced in this case if not permitted to examine Plaintiff in person. Indeed, it is Saks' belief that this obvious handicap to Saks is precisely what motivates Plaintiff to completely refuse to entertain any possible means of conducting an in-person deposition. It is axiomatic that deposing a critical witness, whose veracity is being challenged repeatedly, over a computer screen – in the comfort of her own living room – is simply less effective than doing it in person. Plaintiff knows that, and so does her counsel. In light of the substantial amount of Plaintiff's claimed damages in this case, it is critically important that Saks be given every opportunity to conduct a complete examination of Plaintiff and ferret out any untruths or lack of knowledge she may have. Any other result could have dire consequences for Saks' ability to defend Plaintiff's claims.

## CONCLUSION

Chief Magistrate Judge Baker got it right last week when she examined the factors that should be considered in determining whether a party should be permitted to conduct an in-person deposition of a witness despite potential COVID concerns. In *Howland*, the defendant filed a protective order seeking to preclude an in-person deposition, stating he was uncomfortable with the number of people who would be present due to COVID-19 concerns. *Howland*, 2020 WL 4890080 at *5-6. The defendant stated he was specifically concerned because of the age of his parents and his daughter. *Id*. at *6. Scheduled to appear were the deponent, three attorneys, a court reporter and a videographer. *Id*. Judge Baker noted she was unable to find any restrictions applicable to the Iowa location where the deposition was set to occur that would prevent an in-

person deposition, just as there are no such restrictions in place in St. Louis where Plaintiff's deposition is to occur. *Id*. Judge Baker ordered the defendant to appear for his deposition within two weeks and directed the noticing party to make every effort to follow applicable guidelines and hygiene requirements. *Id*. The same result should follow here.

WHEREFORE, Saks Fifth Avenue LLC respectfully moves the Court for an Order compelling Plaintiff to appear in person for her deposition on or before October 31, 2020 at a date and time mutually agreeable to the parties.

Respectfully submitted,

 */s/ Melody L. Rayl*
Melody L. Rayl, MO Bar No. 60362
Lauren M. Sobaski, MO Bar No. 68798
**FISHER & PHILLIPS LLP**
4900 Main Street, Suite 650
Kansas City, MO 64112
Phone: (816) 842-8770
Facsimile: (816) 842-8767
Email:  mrayl@fisherphillips.com
Email:  lsobaski@fisherphillips.com

ATTORNEYS FOR DEFENDANT
SAKS FIFTH AVENUE, LLC

9

**CERTIFICATE OF SERVICE**

I certify on this 26th day of August, 2020 that a true and correct copy of the above and foregoing document was served via email to the following:

    Thomas R. Applewhite
    Steven A. Donner
    Donner Applewhite, Attorneys at Law
    1108 Olive Street, Suite 200
    St. Louis, MO 63101-1949
    Phone:  314.293.3526
    Email:  tom.applewhite@da-lawfirm.com
    Email:  steve.donner@da-lawfirm.com

    Jeremy D. Hollingshead
    Hollingshead & Dudley
    7777 Bonhomme Avenue, Suite 2401
    Saint Louis, MO 63105
    Phone:  314.480.5474
    Email:  jhollingshead@hdtriallawyers.com

**ATTORNEYS FOR PLAINTIFF**

                                        */s/ Melody L. Rayl*
                                        Attorney for Defendant